parties, to which they were not moved by any act of the plaintiff. The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, J., concurs.

VAN BRUNT, P. J.   I concur.   Simply because a broker calls the attention of a particular person to a piece of property as being for sale, it does not give him a lien upon that person in respect to that property for all time to come.

---

## ERNST v. CROSBY.

(Supreme Court, General Term, First Department.   December 16, 1892.)

LEASE—BAWDYHOUSE—EVIDENCE.

In an action for rent reserved in a lease, the evidence showed that before and since the execution of the lease the premises were occupied as a house of ill fame by persons who were not parties to the lease; that the lessor knew that fact, and collected his rent from them.   Before executing the lease, the lessor had agreed to give a lease to the persons in possession.   *Held,* that the evidence justified the finding that the lease was made with the intent that the premises should be used for purposes of prostitution.   Van Brunt, P. J., dissenting.

Appeal from judgment on report of referee.

Action by Robert Ernst against Darius G. Crosby, as executor of John Mowatt, deceased, for rent accruing under a lease.   Defendant obtained judgment.   Plaintiff appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

E. B. & W. J. Amend, (E. J. Spink, of counsel,) for appellant.

Fettretch, Silkman & Seybel, (Theo. H. Silkman, of counsel,) for respondent.

BARRETT, J.   The evidence justified the referee's finding that the intention of both parties—lessor and lessee—in making the lease was that the premises should be used as a house of prostitution. ' The lessor, Morris, knew that the premises had been previously used by the Clarks for such purpose, and the intention was to keep them there in the same business, under cover of a lease for innocent purposes to Mowatt.   It was simply a continuation of an existing device, for Mowatt was also lessee in the prior lease, and the receipts for rent (paid by the Clarks to the agent, Flanagan, during the existence of this prior lease) were given in his (Mowatt's) name.   Morris knew that Flanagan was agent for the Clarks' landlord, whoever that landlord might be.   He knew, also, on April 8, 1889, when he contracted for the purchase of the premises, that there was an existing lease thereof, which would expire on the 1st of the following month.   This lease was referred to in the contract, although Mowatt's name as lessee was not there specified.   Thus, however, Morris had notice either that the Clarks themselves were such

lessees, or that they were occupying as subtenants of some unnamed lessee.    He knew that the Clarks were paying rent to some one,—who was Flanagan's principal,—for he told Mrs. Clark not to pay Flanagan a small sum, which she was about to pay, but to apply such sum to repairing the house.    The negotiation for the new lease was between Morris and Mrs. Clark.    Morris told her that he would give her a long lease, and sent her down to his lawyers to get it.    This was with full knowledge of her business and of the use to which the house was being put.    Mrs. Clark went down to Morris' lawyers, and the new lease was actually made out in the names of the Clarks as lessees.    Such lease, so prepared, was even signed by the man Clark.    Afterwards this lease was destroyed, and the new lease, as finally made out and signed, ran to Mowatt as lessee; but there was no change whatever in the existing arrangement, except that the Clarks now paid their rent directly to Morris, instead of, as formerly, to the agent, Flanagan.    The first payment was made almost immediately after the execution of the new lease, namely, on the 1st day of May, 1889.    And Mrs. Clark testified that Morris "treated the girls" in the house whenever she paid him the rent. Was Morris, it may be asked, acting as agent for his own nominal lessee, Mowatt, when he collected these rents in this house of prostitution from its proprietress and treated the occupants?   And how did it happen that Mowatt, the existing lessee in the expiring lease, was substituted for the Clarks after Morris had promised Mrs. Clark the new lease, and had sent her down to his lawyers to obtain it, and even after the new lease had been made out to the Clarks, and signed by one of them?    We find no answer to these questions in any of the testimony offered by the plaintiff, nor do we find any answer to the group of facts and circumstances thus presented by the defendant.    Those facts and circumstances, so far as they are material, may be recapitulated as follows:    Morris well knew, before he purchased the property, and before he executed the lease in question, that the premises were being occupied and used as a house of prostitution, and that the occupants were paying rent to an agent therefor.    Morris, with this knowledge, promised these occupants a new lease, and sent them to his lawyers to have it prepared. It was so prepared, and then it was destroyed, and a lease to Mowatt substituted.    Subsequently Morris dealt directly with these occupants, and collected rents from them with full knowledge of their continuously corrupt use; and he did this without regard to the form of the new lease or to the lessee named therein.    It seems to me that a prima facie case of corrupt purpose on Morris' part (when he executed the lease to Mowatt) was thus made out, and that such corrupt purpose, to which all the circumstances so convincing point, called at least for explanation.    But such explanation was not forthcoming.    Morris was not called as a witness, and Mrs. Clark's testimony with regard to her negotiations and transactions with him personally—although, of course, testimony of a tainted character—was uncontradicted.    There were crucial parts of her testimony, which, if untrue, could easily have been refuted.    There were also other parts which were fully corroborated.    Upon the whole, I

think the referee's findings were entirely justified, and, as there was no error in the admission or rejection of testimony, or in the legal conclusions deducible from the facts found, the judgment should be affirmed, with costs.

O'BRIEN, J., concurs.

VAN BRUNT, P. J., (dissenting.) This case arises out of a claim presented by the plaintiff for rent against the estate of John Mowatt, deceased, of premises No. 154 West Thirty-Second street in the city of New York, which was disputed by the executors of said Mowatt, and, a reference having been ordered, the referee reported against the claim, upon the ground that at the time the lease in question was entered into between the lessor, one Morris, and the lessee, Mowatt, it was intended that said premises should be used as a house of prostitution; and the question presented upon this appeal is whether there is evidence sufficient to sustain this finding of the referee. It appears to be undisputed from the evidence that in 1888, 1889, and 1890 one Clark and his wife occupied the premises, and kept them as a house of prostitution; and that on the 8th of April, 1889, Morris made a contract with the then owner of the house for the purchase of the same, which contract provided for the passing of the title on the 27th of April, 1889, and was made subject to a lease of said premises, expiring on the 1st of May, 1889. On the 26th of April, 1889, Morris leased the premises in question to said Mowatt, by which lease it was expressly provided that the house should be used as a dwelling house only, and that the lessee should obey all lawful orders of the health department and all other departments of the city government. There is no evidence that Morris knew who the lessee mentioned in the lease expiring on the 1st of May, 1889, was. It further appears that subsequent to the lease by Morris the premises continued to be occupied by Clark and his wife, and used as a house of prostitution, and Morris visited the premises during this time. We have searched the record in vain for any satisfactory evidence going to show that at the time of the making of the lease Morris knew that there was any connection between the lessee, Mowatt, and the Clarks. It is true that Mrs. Clark swears that in a conversation with Mr. Werner, who was the attorney of Morris for the purpose of drawing up the papers, he said he could not make out a lease to Clark, or he would be held liable if he rented the place for that purpose; but this by no means necessarily proves that the lease was made to Mowatt as a cover for the occupation of the Clarks. It is true that Mrs. Clark swore that Morris agreed to give them a lease for five or ten years; but the evidence show that Morris refused to execute any lease to the Clarks, although he did execute a lease to Mowatt; and, as has already been said, there is no evidence whatever that Morris knew anything about the connection between Mowatt and the Clarks. Morris' knowledge of the occupation of the premises subsequent to the execution of the lease could not invalidate the same if there is no evidence of an illegal intention at the time of the making of the lease. Great stress is laid by

the counsel for the defendant upon the fact that Morris was not examined as a witness, or called upon to testify. But until it had been shown with a reasonable degree of conclusiveness that Morris, in the execution of the lease to Mowatt, was actuated by an unlawful intent, it is difficult to see what he had to explain, and the case seems to be absolutely barren of evidence from which such a conclusion may be arrived at. It would appear that the referee was controlled in his decision by the fact that Morris knew that his house had been occupied as a house of prostitution prior to his letting to Mowatt and subsequent thereto, and that, therefore, it must have been let with the intent that it should be so kept. But we do not think that this conclusion is one which must necessarily obtain; and a person cannot be deprived of his property upon mere inference, when the evidence from which such inference is drawn is susceptible of a different conclusion. The evidence of Mrs. Clark in many important particulars is directly contradicted by that of Mr. Werner, and certainly the occupation in which she was engaged was not such as would naturally add to her credit, notwithstanding her claims of reformation. Upon evidence of this character we do not think that a person should be deprived of his property. The judgment should be reversed, and a new trial had before a new referee, to be appointed by this court, to determine the question at issue between the parties, with costs to plaintiff to abide the final result.